UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALFRED PACE,

    Petitioner,

vs.

ROBERT AYERS, Warden,

    Respondent.
_____/

No. C 06-5810 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. In the initial review order, the court dismissed a Fourth Amendment claim as not cognizable in a federal habeas case and dismissed the other two claims with leave to amend. After petitioner amended the petition, the court ordered respondent to show cause why the writ should not be granted based on petitioner's two cognizable claims for relief. Respondent filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Although given an opportunity to do so, petitioner did not file a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

    Petitioner does not dispute the following factual background, which was set forth in the California Court of Appeal opinion. In the early morning hours of April 4, 2003, Santa Rosa Police Officer Josh Ludtke responded to a 911 call from a liquor store. Elaine Pace, petitioner's wife, was waiting for Ludtke, dressed only in a nightgown. She told him that she and petitioner lived nearby, and they had just argued because petitioner thought that she was being unfaithful. She said that petitioner had been using drugs all day, and then

he began breaking things in the house, including furniture and the television.  He threatened to kill Elaine, and he threw the hammer at her head while she was sitting quietly on the couch.  He missed, and the hammer made a hole in the wall behind her.  Petitioner retrieved the hammer, threw it at her again, missed and made another hole in the wall behind her.  Later, petitioner ordered her to drive with him and their 18 year-old daughter, Felicia, to a store.  While in the car, he pushed her arm a couple of times.  On the way home, petitioner lit a cigarette lighter and held it against her bare leg.  Scared, she left the car and called the police from a pay phone at the liquor store near their home.

After Elaine relayed this account to Officer Ludtke, he and two other officers accompanied Elaine back to the Pace residence.  Petitioner answered the door and told them there was no dispute at the house.  Because petitioner was not being cooperative in coming out of the house, Ludtke handcuffed petitioner.  Ludtke went inside the house with petitioner and saw Felicia, who seemed distraught.  She corroborated the account Elaine had given to Ludtke.  Ludtke saw a broken television, and two holes in the wall about 12 to 15 inches above the top of the couch.  Ludtke retrieved the hammer from the front seat of the car.  Elaine told Ludtke that she wanted an emergency restraining order, and she wanted petitioner taken away for a few days but not arrested.

Elaine testified at trial to a somewhat different version of the story she had told to Ludtke.  She testified that petitioner had gotten angry about a male friend who had been visiting that evening.  He started breaking things with a hammer, including furniture and a television, and knocked holes in the wall while Elaine and Felicia remained in their bedrooms.  At approximately 3:00 a.m., Elaine and petitioner drove to the store for cigarettes, but did not argue.  After they returned home, she called the police because he told her that he was going to continue to break things.  She testified that she lied to the police about his throwing a hammer at her and holding a lighter to her leg because she was upset and angry.

Evidence was also introduced of a prior domestic violence incident by petitioner in

August 1995.  Officer David Peterson, who responded to the 911 call, testified that when he arrived, Elaine was hysterical and hiding underneath a truck near the home.  She told him that petitioner was tearing up the house, hit the children, pulled them around by the hair, and made them drown their pets.  Petitioner came out of the house and cursed at Peterson; after a struggle, Peterson subdued him.  Elaine told Peterson that petitioner had returned from jail that morning very angry, threw a rock through the bedroom window, entered the house and threw the brick at Elaine's television.  He then woke up the three children, ages 11, 12, and 14, and told them that if they did not kill the cat and her four kittens he was going to kill them.  Threatening them with a brick, he made the 11 year-old drown two kittens and the older two children drown the other kittens.  He then ordered Elaine to drown the mother cat.  She then told Peterson that she went to the nearby liquor store and called the police from a payphone.

    At trial, Elaine testified that she no longer remembered telling the police that petitioner would kill the animals if she and her children did not, that she lied when she had said that she was afraid petitioner would hurt her, and that she lied when she had said petitioner made her drown the cat.

    Elaine also testified about a prior call to the police, in March 1995, when she cut her lip.  She testified that she did not recall how she got the injury.  However, Sergeant Gaeslin, who responded to the call, testified that she told him that petitioner had punched her in the face during an argument.

    A jury in Sonoma County Superior Court convicted petitioner of two counts of assault with a deadly weapon, *see* Cal. Penal Code § 245(a)(1); threatening to commit a crime which would result in death or great bodily injury, *see id.* at § 422; and spousal battery, *see id.* at 243(e)(1).  In a separate proceeding, the trial court found that petitioner suffered prior convictions and a prior prison term.  The trial court sentenced petitioner to a total term of thirteen years in state prison.  Petitioner unsuccessfully appealed his conviction to the California Court of Appeal.  He then filed a petition for a writ of habeas corpus in the

California Supreme Court, which was denied.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at

4

340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) his double jeopardy rights were violated when he was charged with two counts of assault with a deadly weapon arising from the same offense; and (2) his counsel was ineffective in her handling of prosecution witness Elaine Pace.

**I.  Double Jeopardy**

Petitioner claims that his double jeopardy rights were violated because he was charged and convicted with two counts of assault with a deadly weapon. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *Witte v. United States*, 515 U.S. 389, 395-96 (1995). Here, petitioner claims that his was subject to multiple punishments for a single offense because his conduct consisted of only one offense insofar as there was only one victim and "the crime did not involve separate acts of violence."[1]  Petition, Attachment at 2.

In the federal courts the test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) determines whether crimes are indeed separate and whether cumulative punishments may be imposed. *Rutledge v. United States*, 517 U.S. 292, 297 (1996). The Double Jeopardy Clause is not violated if "each [offense] requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Here, the two counts of assault were based

---

[1] Petitioner's concurrent sentences on the two assaults constitute "multiple punishments" for purposes of the double jeopardy analysis, and they would be impermissible if imposed for a single offense. *See Ball v. United States*, 470 U.S. 857, 864-65 (1985).

5

on the two times petitioner threw a hammer at his wife's head. The prosecutor had to prove separate facts with respect to each. First, the prosecutor had to prove that petitioner threw the hammer the first time. To prove the second assault, the prosecutor had to prove the additional facts that petitioner then he retrieved the hammer, returned to the front of the couch, and threw the hammer at his wife's head a second time. As proof of each assault required proof of separate facts, petitioner's conduct constituted two separate offenses under *Blockburger*. Consequently, the sentences for two counts of assault with a deadly weapon did not constitute multiple punishments for the same offense, and petitioner did not suffer a violation of his rights under the Double Jeopardy Clause.

Petitioner also appears to argue that the sentence enhancements for his prior conviction and prison term violated his double jeopardy rights. Enhanced punishment imposed for a later offense "'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Witte v. United States*, 515 U.S. 389, 400 (1995) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)). The use of prior convictions to enhance sentences for subsequent convictions does not violate the Double Jeopardy Clause. *Spencer v. Texas*, 385 U.S. 554, 560 (1967). Consequently, petitioner's double jeopardy rights were not violated by his sentence enhancements for his prior conviction and prison sentence.

The state courts' denial of petitioner's double jeopardy claim was neither contrary to nor an unreasonable application of state law, and he is not entitled to habeas relief on this claim.

**II.    Ineffective Assistance of Counsel**

Petitioner claims that counsel was ineffective assistance in her handling of Elaine Pace. A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to

prevail on a Sixth Amendment claim based on ineffectiveness of counsel, petitioner must establish two distinct elements. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. The relevant inquiry is not what defense counsel could have presented, but rather whether the choices made by defense counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d at 1173. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (noting with approval district court's refusal to consider whether counsel's conduct was deficient after determining petitioner could not establish prejudice).

During direct examination of Elaine Pace, the prosecutor asked her about her testimony during petitioner's 1995 trial for domestic violence. When she testified that she did not remember what happened during that incident, the prosecutor refreshed her recollection with a transcript of the trial. Defense counsel complained that she had not been given notice or a copy of the transcript, and the trial court gave defense counsel additional time to prepare for cross-examination. While cross-examining Elaine, defense counsel asked her what happened at the end of the 1995 trial, and she responded that petitioner went to prison. Petitioner complained to the court that Elaine's testimony about his prior prison term was prejudicial. The court offered to strike the statement and admonish the jury to disregard it. Defense counsel decided that admonishing the jury about the statement would only highlight the statement and would risk causing the jury to give it additional importance. The prosecutor wanted the admonishment, but the trial court agreed with defense counsel, and instead simply instructed the jury at the end of the

case that it should not consider penalty and punishment in reaching its verdict.

First, petitioner argues that counsel "forced" Elaine Pace to testify on cross-examination that petitioner had previously served a prison term for the 1995 domestic violence conviction. Counsel did not force such testimony. Rather, Elaine's testimony to petitioner going to prison was an unexpected response to a general question by defense counsel about what happened at the end of the trial. As noted by the trial court, defense counsel's question to Elaine was "innocuous," and Elaine's answer "just came out." Resp. Ex. 2 (Reporter's Transcript) at 504-05. Furthermore, counsel made a reasonable decision after Elaine's testimony that an admonishment by the trial court would highlight the testimony and risk emphasizing its importance to the jury. In any event, the testimony about petitioner's prior prison term was unlikely to have made a difference in the outcome of this case. To begin with, the jury heard evidence from the 1995 trial that petitioner had previously been in jail, threatened his wife and young children with a brick, pulled his children around by the hair, and forced them to drown their cat and kittens. In addition, the evidence against petitioner of the charged crimes was strong. Elaine's account to the police was corroborated by Felicia, by the holes found in the wall and the hammer in petitioner's car, by petitioner's history of domestic violence against Elaine and by the similarity with the 1995 incident in which petitioner had also smashed her television in a rage prior to threatening her and her children. Because of the strong evidence against petitioner, as well as the extensive evidence portraying petitioner in a bad light, there is no reasonable probability that counsel's questioning of Elaine, even if had been ineffective, affected the outcome of the trial.

Petitioner also complains that counsel did not move for a mistrial based on the prosecutor's late production of the transcript of petitioner's 1995 trial. In order to show prejudice from counsel's failure to file a motion, a petitioner must establish a reasonable likelihood that such a motion would have been granted. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). In addition, trial counsel cannot have been ineffective for failing

8

to raise a meritless motion.  *Id.*  When the prosecutor first introduced the transcript at trial, defense counsel objected, but the trial court overruled the objection.  The defense knew that the facts of the 1995 trial were going to be introduced at the current trial and had been provided wit the police reports.  The trial court, rather than prohibiting the prosecutor from using the transcript at all, chose the less drastic remedy of allowing defense counsel more time to review the transcript in preparation for cross-examination.  As the trial court overruled defense counsel's objection, a motion for a mistrial on the same grounds as the objection would have been very unlikely to succeed.  Accordingly, petitioner was not prejudiced within the meaning of *Strickland* by counsel's failure to file a motion for a mistrial.  Nor is there any indication that petitioner was prejudiced by the prosecutor turning over the transcript when he did.  Petitioner does not indicate, nor is it apparent from the record, in what particular way the cross-examination of Elaine Pace or any other aspect of the defense was harmed by not receiving the transcript earlier.

For the reasons described, the state courts' denial of petitioner's ineffective assistance of counsel claims was neither contrary to nor an unreasonable application of state law, and he is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 13, 2009

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\HC.06\PACE810.RUL.wpd

9